## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IBX JETS, LLC, a South Carolina Limited )
Liability Company, )
                 Plaintiff, )
 )
 )
-vs- )
 )    Honorable _____
PARADIGM JET MANAGEMENT, INC., a )    Case No. _____
Michigan Corporation, JETAWAY AIR )
SERVICE, LLC, a Michigan Limited Liability )
Company, JUSTIN SULLIVAN, Individually, )
 and d/b/a UB AIR, a Massachusetts Sole )
Proprietorship, and UB AIR, LLC, )
a Limited Liability Company, )
              Defendants, )
 )
**AND** )
 )
CHRISTOPHER JONES, Individually, MICHAEL )
JONES, Individually, BRANDON COLEMAN, )
Individually, and IBX AIR CORPORATION, a )
Florida Corporation, )
             Plaintiffs, )
-vs- )
 )
JUSTIN SULLIVAN, Individually, and d/b/a )
UB AIR, a Massachusetts Sole Proprietorship, )
and UB AIR, LLC, a Limited Liability Company, )
             Defendants. )

---

**STEVEN M. CHAIT** (P33747)
**STEVEN M. CHAIT, P.L.C.**
Attorney for Plaintiffs
6515 Highland Road, Suite 100
Waterford, MI 48327
(248) 666-1100
(248) 666-5050 Facsimile

---

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs, **IBX JETS, LLC, CHRISTOPHER JONES, MICHAEL JONES, BRANDON COLEMAN and IBX AIR CORPORATION**, by and through their attorneys, **STEVEN M. CHAIT, P.L.C.,** and for their causes of action against the Defendants state as follows:

### JURISDICTION AND GENERAL ALLEGATIONS

1.      All conditions precedent to maintaining these causes of action have accrued. The amount in controversy exceeds the minimal jurisdictional amount as is required by this Court, exclusive of costs and interest, and jurisdiction is otherwise proper before this Court, as is more fully explained below.

### PLAINTIFF IBX JETS, LLC

2.      Plaintiff IBX Jets, LLC, ("IBX") is a South Carolina Limited Liability Company in the business of leasing or owning business jet aircraft and offering aircraft charter services to the public through an Aircraft Management Agreement with Defendant Paradigm Jet Management, Inc., ("Paradigm") the holder of a Federal Aviation Administration (FAA) Part 135 Air Carrier Certificate.

3.      That Plaintiff IBX currently holds leases to operate two business jet aircraft through Aircraft Lease Agreements, which aircraft include a Gulfstream G-V Aircraft, Serial No. 518, Federally Registered as N17ND and a Gulfstream Model G- IV Aircraft, Serial No. 1098, Federally Registered as N198GS.

### DEFENDANT PARADIGM JET MANAGEMENT, INC.

4.      Paradigm is a Michigan Corporation whose address is 800 Ellis Road, Muskegon, MI

49441. Paradigm is located at and flies out of the Muskegon County Airport (KMKG), County of Muskegon, State of Michigan.

5.     That on or about February 25, 2015, Plaintiff IBX executed an Aircraft Management Agreement (AMA) with Defendant Paradigm for the management of a Gulfstream G-V, Federally Registered as N17ND, which Agreement was to go into effect on March 13, 2015, **(See Exhibit 1)**.

6.     That pursuant to the Aircraft Management Agreement (AMA) for the Gulfstream G-V,  it is the responsibility of Defendant Paradigm (Manager) pursuant to Section 4(b), to provide or otherwise arrange for the maintenance of the Gulfstream G-V so as to keep the Aircraft in good operating condition, ordinary wear and tear accepted, and in such condition as may be necessary to enable the Airworthiness Certification of the Aircraft to be maintained in good standing at all times under the Federal Aviation Act of 1958 and regulations promulgated there under, as in effect from time to time.

The initial term of the Agreement pursuant to Paragraph 26, shall be for a term no less than one (1) year starting on the commencement date of this Agreement.  After the initial term, this Agreement is to remain in force until terminated or revised by either party per the conditions of this Agreement.

7.     The Aircraft Management Agreement (AMA) for the Gulfstream G-V Aircraft states the Agreement shall not terminate until at least one (1) year from the commencement date of March 13, 2015.  Therefore, the Aircraft Management Agreement is currently in effect as of the date of this Complaint and may not be cancelled by Defendant Paradigm until at least the initial term of the Agreement has run with no less than thirty (30) days advance written notice to the other party.  See Paragraph 14 regarding Termination.  **(See Exhibit 1)**.

8.    That in December 2015 alone, Plaintiff IBX paid to Defendant Paradigm payments in excess of $140,000.

9.    That from the commencement of the Gulfstream G-V Aircraft Management Agreement on March 13, 2015, Plaintiff IBX has had Defendant Paradigm fly the Gulfstream G-V approximately 1,120 hours for revenue air charter flights.

### GULFSTREAM G-V AIRCRAFT, N17ND

10.   That pursuant to the Aircraft Management Agreement (AMA) for the Gulfstream G-V, Exhibit 1, Defendant Paradigm had the obligation to provide timely maintenance to the G-V Aircraft so as to keep the Aircraft in good operating condition and in such condition as may be necessary to enable the Airworthiness Certification of the Aircraft to be maintained in good standing at all times.

11.   11.  On or about December 19, 2015, Plaintiff IBX had Defendant Paradigm begin a charter flight which had been purchased by a customer to depart from White Plains, New York (KHPN) to Ushuaia, Argentina (SAWH).  The aircraft departed on or about December 19, 2015, and was due to return on or about January 1, 2016.  Although Defendant Paradigm flew the Gulfstream G-V to St. Lucia (TLPL) in order to perform a crew swap before the return leg, once the aircraft was in St. Lucia, Defendant for the first time notified Plaintiff IBX that there was only one (1) hour of flight time remaining on the turbine jet engines, before the aircraft must be grounded for a FAA required fan blade inspection. This unfortunately resulted in the passengers who were due to return on or about January 1, 2016, having no transportation back to the United States.  This malfeasance on the part of Paradigm cost IBX at least $90,000 in direct expenses which represents lost revenue, and must in addition be refunded to the air charter customer. In addition, IBX management visited the offices at Paradigm in Muskegon MI on or about December 14, 2015 in advance of the Holiday

season to ensure Paradigm had access to the master charter schedule that IBX made available via Google Calendar, and to ensure IBX management and maintenance personnel were aware of any upcoming scheduled maintenance. IBX met with Allen Shaver Flight Dispatcher, Jeff Spyke (President), Gail Spyke (General Manager), JC Walker (Director of Maintenance). All individuals stated there was no scheduled maintenance due and further informed IBX that the only scheduled maintenance was the landing gear inspection scheduled for February 1, 2016. Once finding out about the inspection it was further discovered without prior knowledge of IBX, that the engines were already in the "grace period" and no extension could be honored with the engine manufacturer in order to complete the SAWH - KHPN flight. Subsequently, IBX was forced to incur significant expenses in order to ferry the GV to Austin, Texas for Paradigm to perform the inspection, which subsequently resulted in yet another empty non-revenue flight to be in position for the next charter originating from Montego Bay, Jamaica.

12.     This unscheduled and unplanned grounding of the Gulfstream G-V Aircraft resulted in numerous additional cancelled charter trips during the holiday season, which is traditionally the highest volume air charter travel time of year.  There are virtually no suitable replacement business jets available for lease or charter during the busy holiday season.  Due to the sudden grounding of the Gulfstream G-V, numerous other revenue trips were forced to be cancelled resulting in not only loss of revenue to Plaintiff IBX, but also extremely bad publicity in that the air charter customer on the Argentina trip was a high visibility individual, and the constant bombardment of cancelled trips due to unnecessary mistakes on the part of Paradigm resulted in loss of air charter business as well as IBX's good will and reputation, to aircraft charter brokers who supply the air charter customers to Plaintiff, and also to the clients of IBX.

## GULFSTREAM G-IV AIRCRAFT, N198GS

13.     That on or about September 28, 2015, Plaintiff IBX additionally entered into an Aircraft Management Agreement (AMA) with Defendant Paradigm to additionally have Paradigm operate on its FAA Part 135 Air Carrier Certificate, Gulfstream G-IV Aircraft, Serial No. 1098, Federally Registered as N198GS. **(See Exhibit 2)**. The commencement date of the AMA (at Exhibit 2) between Defendant Paradigm and Plaintiff IBX was dated August 1, 2015.  It is the duty of Defendant Paradigm at Paragraph 4(b) that Defendant shall again provide or otherwise arrange for maintenance so as to keep the Aircraft in good operating condition and in such condition as may be necessary to enable the Airworthiness Certification of the Aircraft to be maintained in good standing at all times.

14.     Defendant Paradigm determined that the Wi-Fi equipment to provide the passengers with in-flight internet service was inoperative despite, Plaintiff IBX's $136,000 investment towards the installment of the Wi-Fi system.  Notwithstanding these obligations, Defendant Paradigm failed to either repair or timely apply to the FAA for a Minimum Equipment List (MEL) to be approved, which would permit the operation of the Gulfstream G-IV Aircraft with inoperative Wi-Fi for the passengers. Defendant Paradigm without timely notice to Plaintiff IBX did not timely file the proper paperwork with the FAA, resulting in the first international charter on this Aircraft being severely delayed, and has also caused numerous other trip cancellations at great expense and lost income to Plaintiff IBX.  Timeline for Paradigm to obtain the MEL:

- GIV delivered to IBX from Lessor on or about 9/30/2015 to Paradigm office for conformity.

- Initial submission of MEL to FAA by Paradigm: 10/27/2015.

- FAA sent back for corrections to Paradigm: 11/22/2015.

- Resubmitted by Paradigm to FAA: 12/16/2015.

- Received Final MEL: 1/7/2016.

15.     At a minimum a partial list of Gulfstream G-IV trips that were cancelled due to the malfeasance of Defendant Paradigm include a flight from KMIA/KPBI-EGGW (loss of $10,000) on a charter from Air Partner; KPBI-KSDL ($25,000 loss of revenue) on a cancelled charter for Horizon Air Charter; ($15,000 loss of revenue) for a charter KTEB-KPBI for Charter Jet One. **These losses of revenue totaled $50,000** in addition to empty reposition costs associated with ferrying the aircraft.

16.     In addition, due to the constant domino effect of these unnecessary mistakes on the part of Paradigm, Plaintiff IBX was placed in an unfortunate situation, having to issue refunds for numerous cancelled trips, and flying empty instead of setting aside money for fixed costs, such as lease and reserve payments for both aircraft.

17.     Due to these delays and impromptu expenses, and, as a result of the forced cancellation and loss of multiple charter flights and their expected revenue, as well as the Plaintiff's good will having been severely damaged to brokers and clients, Plaintiff was not able to timely issue the full payment for the Gulfstream G-V reserve payment for the month of January.

18.     This delay caused Paradigm to ground the aircraft at the request of Jetaway, which in turn caused cancellation of four additional revenue charter trips.

19.     The above mistakes on the part of Defendant Paradigm also caused the following flights which had to be made empty to reposition the aircraft:  PBI-VNY ($15,000 empty costs); TLPL-AUS ($17,000 empty costs); AUS-MKJS ($19,000 empty costs).

20.     In addition, IBX was required to pay additional ferry costs, international fees and flight time expense related to these mistakes of Defendant Paradigm in the amount of $22,000.

## DEFENDANT JETAWAY AIR SERVICE, LLC

21.     That Defendant Jetaway Service, LLC, ("Jetaway") is a Michigan Limited Liability Company having its principal place of business at 800 Ellis Road, Ste. 168, Muskegon, MI 49441, County of Muskegon, State of Michigan.

22.     That the office of Jetaway is immediately adjacent to the office of Defendant Paradigm.

23.     That on or about February 12, 2015, Plaintiff IBX entered into an Aircraft Dry Lease Agreement set to go into effect on March 13, 2015, which leased the Gulfstream G-V Aircraft, N17ND, for a term commencing on March 13, 2015, and continuing through 5:00 p.m., on September 13, 2016, pursuant to Article 2(a) **(See Exhibit 3)**.

24.     That the basic rent pursuant to the Lease Agreement for the Gulfstream G-V Aircraft was $150,000 per month with an additional Use Rent due to lessor Jetaway for every hour that the Aircraft is flown during the lease term.

25.     That on or about September 22, 2015, an Amendment to the Aircraft Dry Lease Agreement went into effect which was executed by Jetaway Air Service, LLC, on September 23, 2015, and executed by Plaintiff IBX on October 6, 2015.  **(See Exhibit 4)**.

26.     That the Amendment to the Aircraft Dry Lease Agreement permitted Plaintiff IBX to pay an additional $50,000 per month in addition to the $150,000 per month payment, and shall permit the Plaintiff IBX to ultimately purchase the Aircraft.

That, upon information and belief, the Managing Member of Jetaway and the President of Defendant Paradigm are relatives, and in fact the President of Paradigm executed the Aircraft Dry Lease Agreement between Defendant Jetaway and Plaintiff IBX, on behalf of Defendant Jetaway **(See Exhibit 4, at page 9)**.

27.     That as a result of the mistakes and mishandling of the maintenance on both the Gulfstream G-IV and the Gulfstream G-V Aircraft, a domino effect of cancelled revenue charter flights ensued, and the negative effect on the good will of Plaintiff IBX with third-party aircraft charter brokers and Plaintiff's clients, ultimately caused a negative cash flow in which Plaintiff was required to return numerous charter payment fees, and this also resulted in the loss of new business and new charter bookings.

28.     As a result, in January 2016, for the first time Plaintiff IBX was only able to make a partial payment pursuant to the Gulfstream G-V Aircraft Dry Lease Agreement to Defendant Jetaway, but was not able to make 100% of the payment, regardless of the fact that Plaintiff IBX had made a payment in excess of $486,000 to Defendant Jetaway and Paradigm in December 2015.

29.     Nevertheless, on or about January 10, 2016, Defendant Jetaway and Paradigm Jet Management instructed associates at KPBI to engage a boot on the front landing gear and park a fuel truck in front of the aircraft. Then on January 14, 2016, Defendant Jetaway wrote a letter to IBX stating that it would therefore terminate the Gulfstream G-V Aircraft Dry Lease Agreement with Plaintiff on January 22, 2016, if the remainder of the outstanding balance was not paid.

30.     Notwithstanding the letter giving Plaintiff IBX until January 22, 2016, upon information and belief, the Gulfstream G-V Aircraft was removed from the previous destination and temporary base (KPBI) and made unavailable to Plaintiff on or about January 19, 2016. Approximate time of departure was 8:20 a.m.

31.     That from the commencement of the Aircraft Lease Agreement for the Gulfstream G-V Aircraft, Plantiff IBX from March 2015 forward has always made every payment and obligation in full until the January 2016 payment, which could not be paid in full as a result of Defendant Paradigm's mishandling of maintenance on the Gulfstream G-V Aircraft, as well as the mishandling

of maintenance on the Gulfstream G-IV Aircraft which resulted in a loss of the cash flow of both Aircraft.

32.     Upon information and belief, both Defendant Paradigm and Defendant Jetaway have conspired to not only destroy the very viable and lucrative air charter business of Plaintiff IBX, but also to unfairly negate the Plaintiff's Aircraft Lease Agreement and Amended Aircraft Purchase Agreement, leaving Plaintiff with effectively no aircraft and a diminished reputation with other air charter business professionals and air charter customers.

33.     Defendant Jetaway must continue to honor the Gulfstream G-V Aircraft Dry Lease Agreement and Amendment permitting purchase of the aircraft.

34.     That in the event that Defendant Jetaway does not continue the Dry Lease and Purchase Agreement, then Defendant Jetaway must at a minimum refund the following amounts to Plaintiff IBX:  $66,000 back from the unused portion of the January 2016 Lease; return of the $150,000 deposit from Jetaway back to Plaintiff IBX; an additional $200,000 must be returned for the Lease Purchase Agreement overpayment (the extra $50,000 per month portion of the Lease Agreement).

**Additional Payments Recently Made by Plaintiff IBX to Upgrade the Gulfstream G-V Aircraft**

35.     That in reliance upon the representations of both Defendants Paradigm and Jetaway, Plaintiff within the last several months spent the following additional sums:  Installation of Wi-Fi in the Gulfstream G-IV at an expense of $136,000; addition of new carpet to the Gulfstream G-IV just over one month ago at an expense of $8,000; $5,000 APIS subscription in December 2015 for one year for the navigation systems of the Gulfstream G-IV; stock material for the Gulfstream G-IV including ipads, silverware, china, etc., at an expense of $6,000; training expense of $150,000; Hope Aviation insurance check of $9,800; reimbursement for the ferry to AUS and back for the Gulfstream

G-V fan blade inspection expense; aggregate turbine jet engine overhaul and airframe reserves of approximately $1,430,000 million dollars.  Plaintiff has further incurred the following aggregate expenses: fuel/handling $2,800,000; payroll $481,000; lease payments, $2,700,000 million dollars; gross expenses $7,410,000 million dollars.

### DEFENDANTS JUSTIN SULLIVAN, Individually, AND dba UB AIR, a Massachusetts Sole Proprietorship AND UB AIR, LLC, a Limited Liability Company

36.     That Defendants Justin Sullivan and his businesses, UB Air and UB Air, LLC, are residents of the State of Massachusetts.

37.     Jurisdiction is proper in this Court pursuant to the Michigan Long Arm Statute, MCL 600.705, because at all times Defendants Justin Sullivan, UB Air and UB Air, LLC, were aware that they were conducting business in the State of Michigan, setting up an air charter flight with Defendant Paradigm based in Muskegon, Michigan, and with knowledge that the Gulfstream G-V Aircraft, N17ND, would be operating out of Muskegon, Michigan.

38.     Defendants Justin Sullivan, UB Air and UB Air, LLC, are Aircraft Charter Brokers who locate individuals who wish to charter a business jet for air transportation, and who then for a fee refer the individual who wishes to purchase air charter with an air charter operator who actually has business aircraft, which are on an FAA Air Carrier Part 135 Air Taxi Certificate, to actually perform the charter flights.  That upon information and belief, the commission fee charged by these Defendants was apparently $20,000.

39.     That the National Business Aircraft Association (NBAA) is an aviation organization whose members are primarily owners and operators of business aircraft, as well as individuals in the Air Charter and Aviation Charter Broker business.

40.     That Defendant Sullivan, UB Air and UB Air, LLC, obtained and referred for

compensation the customer interested in the roundtrip charter flight between White Plains, New York (KHPN) and Ushuaia, Argentina (SAWH) that departed KHPN on or about December 19, 2015, and was due to return on or about January 1, 2016.  As previously stated herein, this was the charter flight in the Gulfstream G-V Aircraft in which the mistakes and failure of Defendant Paradigm to notify, in a timely fashion, Plaintiff IBX that the Gulfstream G-V Aircraft was immediately due for an engine fan blade inspection, prevented Plaintiff IBX from conducting the return flight for the client referred by Defendants Justin Sullivan, UB Air and UB Air, LLC.  This stranded the passengers in Argentina.

41.    Defendant Justin Sullivan, UB Air and UB Air, LLC, on or about January 18, 2016, posted an email to the National Business Aviation Association (NBAA) Charter airmail which is viewed by thousands of individuals who are either members of the NBAA and/or other aircraft charter brokers, aircraft charter operators and others in the fairly close-knit and small aviation business community; the subject line written by and published by Defendant Sullivan at justin@ubair.com stated, **"IBX Jets: Jet Charter Terrorists."** The text of the email stated, "Hello. IBX Jets is an agent for Paradigm Jets G-V, N17ND.  If anyone has had any issues with IBX booking a trip, cancelling it and then stealing your client's deposit, please contact me offline. Sincerely, Justin Sullivan M. 617-943-5387."  **(See Exhibit 5)**.  The reference to Plaintiff IBX as "Jet Charter Terrorists," is patently false, untrue and highly defamatory.  The reference to "Stealing your clients deposit" is also patently false, untrue, and highly defamatory.

42.    That upon information and belief, Defendants, Justin Sullivan, UB Air and UB Air, LLC, have in addition contacted  numerous other individuals in the aircraft broker and aircraft charter business and have specifically made false and untrue, defamatory statements with regard to not only IBX Jets, LLC, but also to its Members, Michael Jones and Christopher Jones and also to

the shareholder of IBX Air Corporation, Brandon Coleman, accusing those individuals of running a web hosting scam and a Ponzi Scheme, all of which are patently untrue.

43.     See Text messages from Justin Sullivan, UB Air to text messages to Brandon Coleman **(See Exhibit 6)**.

44.     That the domino effect of cancelled charter flights as indicated above, caused by the malfeasance of Defendants Paradigm and Jetaway, resulted in the cancellation of flights and requests for numerous business trip refunds. The untrue defamatory statements published by Defendants Justin Sullivan, UB Air and UB Air, LLC, caused numerous customers and air charter brokers to avoid doing business with Plaintiff IBX; the defamatory and untrue statements propounded by Defendants Justin Sullivan, UB Air and UB Air, LLC, has resulted in defamation, business defamation and tortuous interference with a contractor or business relationship or expectancy to Plaintiffs.

### COUNT I
### BREACH OF CONTRACT
### Defendants Paradigm Jet Management, Inc., and Jetaway Air Service, LLC

45.     Plaintiffs hereby reaver and reallege paragraphs 1 through 44 as if specifically restated herein paragraph for paragraph word for word.

46.     Each of the three (3) Agreements (The Aircraft Management Agreement (AMA) between Defendant Paradigm and Plaintiff IBX Jets, LLC, for the Gulfstream G-V Aircraft, the AMA between Defendant Paradigm and Plaintiff IBX Jets, LLC, for the Gulfstream G-IV Aircraft and the Aircraft Lease Agreement between Defendant Jetaway and Plaintiff IBX Jets, LLC, for the Gulfstream G-V Aircraft) constitute a separate valid, enforceable contract in that the parties were competent to contract, there was an offer and acceptance, there was valuable consideration and there was mutuality of obligation between Plaintiffs and Defendants.

47.     The Plaintiffs performed Plaintiffs' obligations under the contracts by generating numerous business jet contracted flights as requested by Defendants. Plaintiffs continued to make all required payments to Defendants as required, until the malfeasance of Defendants caused a domino effect chain of cancelled flights during the busiest travel season of the year, resulting in Plaintiffs only being able to make a partial payment in January 2016, as a result of negative cash flow by having to refund trip payments.

48.     The Defendants breached their contract by their refusal to perform their obligation to provide proper maintenance on both the Gulfstream G-V Aircraft, Federally Registered as N17ND and Gulfstream G-IV Aircraft, Federally Registered as N198GS, in the following particulars:

1)      Defendant's Paradigm's failure to properly advise Plaintiff IBX Jets, LLC, that there was a required jet engine fan blade inspection due on the G-V aircraft, notwithstanding the fact that IBX Jets, LLC, representatives traveled to Muskegon, Michigan to specifically insure that Defendant Paradigm's management and maintenance people were all aware that the upcoming holiday season was a high volume air charter time and that all maintenance required to be scheduled must be handled prior to the beginning of the season;

2)      That Defendant Paradigm failed to timely apply to the Federal Aviation Administration (FAA) to obtain an approved Minimum Equipment List which would permit the Gulfstream G-IV Aircraft to be flown with an inoperative passenger Wi-fi system;

3)      That Defendant Jetaway Service, LLC, breached its Aircraft Lease Agreement for the Gulfstream G-V Aircraft by repossessing the aircraft and denying its use by Plaintiff IBX Jets, LLC, regardless of the fact that all payments had been timely made to Defendant Jetaway up until the partial payment made by IBX Jets, LLC, and that IBX Jets, LLC, had until January 22, 2016, in which to make the remainder of the January payment; however, Defendant Paradigm took the aircraft out of service and made it unavailable to Plaintiff IBX Jets, LLC, on January 19, 2016.

49.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

## COUNT II
## NEGLIGENCE IN MANAGING THE AIRCRAFT
## GROSS NEGLIGENCE IN MANAGING THE AIRCRAFT
### Defendant Paradigm Jet Management, Inc.

50.     Plaintiffs hereby reaver and reallege paragraphs 1 through 49 as if specifically restated herein paragraph for paragraph word for word.

51.     At all relevant times, Defendant Paradigm had a duty and an obligation to provide or otherwise arrange for the maintenance of the Gulfstream G-V so as to keep the aircraft in good operating condition and permit the aircraft to be maintained in good standing at all times so that it would be in good operating condition enabling Plaintiff IBX Jets, LLC, to arrange for and profit by selling air charter trips to air charter agents, air charter brokers and individual customers.

52.     That Defendant Paradigm breached the above duties which Defendant owed to Plaintiff in the following particulars:

1)     By failing to properly research the Gulfstream G-V Aircraft records to determine that an upcoming major maintenance event, the inspection of the jet engine fan blades was due, and failing to perform that inspection prior to the busy air charter season, which resulted in a catastrophic forced cancellation of multiple lucrative air charter trips;

2)     By failing to properly review the aircraft records of the Gulfstream G-IV Aircraft and to timely apply for a Minimum Equipment List (MEA) which would permit the operation of the G-IV with inoperative Wi-fi equipment, since the aircraft cannot be operated for air charters under FAA Part 135 unless a Minimum Equipment List has been applied for and approved by the FAA.

53.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

**COUNT III**
**FRAUD AND MISREPRESENTATION**
**Defendant Paradigm Jet Management, Inc., and Jetaway Air Service, LLC**

54.     Plaintiffs hereby reaver and reallege paragraphs 1 through 55 as if specifically restated herein paragraph for paragraph word for word.

55.     Both Defendant Paradigm and Defendant Jetaway are located in the same office building. The principals of each of the two Defendants are relatives, and the President of Paradigm actually executed the Lease Agreement between IBX Jets, LLC, and Defendant Jetaway on behalf of Defendant Jetaway. Defendants stood to profit by conspiring to unlawfully deprive Plaintiff IBX Jets, LLC, of the use of the Gulfstream aircraft which were operating on Paradigm's FAA Part 135 Air Carrier Certificate for air charters. Defendants conspired to deprive Plaintiff IBX Jets, LLC, of future use of the aircraft, while keeping hundreds of thousands of dollars paid by Plaintiff IBX Jets, LLC, to Defendants.

56.     That Defendants intentionally made false representations of material facts to Plaintiff IBX Jets, LLC, regarding Plaintiff's ability to operate the aircraft with no timely announced major maintenance scheduled events, and further represented that Plaintiff would enjoy the benefit of having the use of both aircraft to provide revenue air charter trips, so long as the Plaintiff made timely payments as contemplated by the Aircraft Management Agreement and the Aircraft Lease Agreement.

57.     Defendants' representations were false when they were made.

58.     Defendants knew that their representations were false when they were made or made them recklessly, without knowing whether they were true.

59.     Defendants made the representations with the intention of inducing the Plaintiffs reliance, the Plaintiffs acted in reliance upon it and the Plaintiffs have been damaged as a result. The

Plaintiffs believed Defendants' representation to be true and acted in reliance upon the Defendants' representation.

60. As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

### COUNT IV
### CONVERSION – TAKING AWAY THE GV
### Defendant Paradigm Jet Management, Inc., and Jetaway Air Service, LLC

61. Plaintiffs hereby reaver and reallege paragraphs 1 through 60 as if specifically restated herein paragraph for paragraph word for word.

62. As stated above, on or about January 10, 2016, Defendants Paradigm and Jetaway had a boot placed on the G-V aircraft while it was located in West Palm Beach, Florida and had a fuel truck parked in front of the aircraft so that it could not be used by Plaintiff IBX Jets, LLC.

63. That the Plaintiffs were entitled to the use and operation of the aircraft pursuant to both the Aircraft Management Agreement and Aircraft Lease Agreement.

64. As a result of Defendants' failure to return the use and possession of the G-V Aircraft, the possession of the aircraft now wrongfully remains with Defendants. Defendants have exerted a distinct active dominion wrongfully over the Plaintiffs' personal property in the following ways:

    a. intentionally dispossessing Plaintiff of a chattel;

    b. using a chattel in the actor's possession without authority to use it;

    c. receiving a chattel pursuant to a sale, lease, pledge, gift or any transaction intending to acquire for himself or another proprietary interest in it;

    d. disposing of a chattel by a sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it;

e.      misdelivering a chattel;

f.      refusing to surrender a chattel on demand.

65.     Plaintiffs have repeatedly demanded that the possession and use of the aircraft be returned to Plaintiffs immediately.

66.     Defendants have both expressly and by their silence refused to return the G-V Aircraft to Plaintiffs use and possession, or to otherwise remunerate Plaintiffs for the value of the lost flights.

67.     The acts described above constitute an unlawful conversion of Plaintiffs' property resulting in damages to Plaintiffs.

68.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

### COUNT V
### DEFAMATION AND BUSINESS DEFAMATION
### Defendants Justin Sullivan, Individually, UB Air and UB Air, LLC

69.     Plaintiffs hereby reaver and reallege paragraphs 1 through 68 as if specifically restated herein paragraph for paragraph word for word.

70.     As stated above Defendants Justin Sullivan Individually, UB Air and UB Air, LLC, are Air Charter Brokers who for a fee-based commission locate customers who seek to purchase charter air travel and then arrange with the operator of a FAA Part 135 Air Carrier to provide the transportation.

71.     That Defendant Paradigm provided the air charter from White Plaines, New York to Argentina as previously stated.

72.     That as a result of the malfeasance of Defendant Paradigm which caused the Gulfstream G-V Aircraft to be grounded after the G-V Aircraft had already flown the customer to

Argentina, it was impossible for the G-V Aircraft to return the customer to White Plaines, New York leaving the customer instead stranded in Argentina.

73.     That as stated above, on or about January 18, 2016, Defendants Sullivan, UB Air and UB Air, LLC, posted one or more posts on a website of the National Business Aircraft Association (NBAA).

74.     The emails falsely accused Plaintiff IBX Jets, LLC, of unethical and unlawful behavior, the full context of which is stated above. Defendant negligently or with actual malice published false and defamatory statements regarding Plaintiff to current aircraft broker agents, aircraft charter brokers and potential customers.

75.     The defamatory statements have a tendency to, and did, prejudice Plaintiff in the conduct of its business and deterred others from dealing with Plaintiff.

76.     The statements Defendant made were not privileged.

78.     The Plaintiff has demanded and Defendant has refused to issue, a retraction.

79.     As a direct and proximate result of Defendants wrongful conduct, Plaintiff has suffered substantial economic injury, loss of good will, harm to its business reputation, loss of esteem and standing in the community and loss of business opportunities.

80.     Plaintiffs have also suffered severe emotional distress as a result of these untrue statements made by Defendants.  Plaintiffs request that this Court enter Judgment in its favor and against Defendants as follows:

1)     Order Defendant to publish a retraction to the same persons and in the same manner as the defamatory statements were published;

2)     Award Plaintiff compensatory damages equal to the amount of losses it has sustained and will sustain;

3)     Award Plaintiff exemplary damages and other and further relief that the Court may deem appropriate, including damages for severe emotion distress.

81.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

**COUNT VI**
**TORTUOUS INTERFERENCE WITH A CONTRACTOR**
**OR BUSINESS RELATIONSHIP OR EXPECTANCY**
**Defendants Justin Sullivan, Individually, UB Air and UB Air, LLC**

82.     Plaintiffs hereby reaver and reallege paragraphs 1 through 81 as if specifically restated herein paragraph for paragraph word for word.

83.     As stated above, on or about January 18, 2016, Defendant posted one or more emails to the National Business Aircraft Association (NBAA), charter air mail list serve as identified above.

84.     The emails and postings falsely accused all Plaintiffs herein of unethical and unlawful behavior.  The Defendants herein were aware that the readers of the emails and the NBAA list serve posting were potential customers with whom Plaintiffs had a contract or business relationship or expectancies.

85.     The business relationships and expectancies had a reasonable likelihood of future economic benefit for Plaintiffs in the form of referrals by air charter agents and air charter brokers of additional air charter business for Plaintiffs.

86.     Defendants knew of the contracts and business relationships and expectancies between Plaintiffs and its potential customers.

87.     By its conduct described above, Defendant intentionally and improperly interfered with the contracts and business relationships and expectancies between Plaintiffs and its customers and potential customers.

88.     That communications described above were intended to, and did, interfere with the

contracts and business relationships and expectancies causing their breach, disruption or termination.

89.     As a direct and proximate result of Defendants wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of good will, harm to its business reputation, loss of esteem and standing in the community and loss of business opportunities.

90.     Plaintiffs request that this Court enter Judgment in its favor and against Defendants for compensatory damages in an amount that is sufficient to compensate Plaintiffs for its actual, consequential and incidental losses, including loss of profits sustained as a result of Defendants wrongful actions, plus interest, costs and reasonable attorney fees.

91.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

## COUNT VII
## PROMISSORY ESTOPPEL
### Defendant Paradigm Jet Management, Inc., and Jetaway Air Service, LLC

92.     Plaintiffs hereby reaver and reallege paragraphs 1 through 90 as if specifically restated herein paragraph for paragraph word for word.

93.     That Defendants explicitly promised that if Plaintiffs entered into the Paradigm Aircraft Management Agreement (AMA) for the Gulfstream G-V Aircraft, the AMA for the Gulfstream G-IV Aircraft, and Defendant Jetaway's Lease Agreement for the G-V Aircraft, that Plaintiffs were entitled to the use and possession of the two Aircraft, which the Plaintiffs had continuing use and possession of pursuant to the above Agreements, and that the Defendants would maintain the two aircraft so they would be flyable for FAA Part 135 Air Charters without being needlessly grounded for previously known required maintenance inspections.

94.     That Defendants' promises were clear, definite and unequivocal and were specifically

made to induce Plaintiffs to enter into the three above contracts for use and possession of the Aircraft.

95.     In reliance on the promise, and to their substantial detriment, the Plaintiffs entered into the Agreements, and the Plaintiffs performed all that was expected in cooperating with Defendants.

96.     Despite Plaintiffs repeated demands, Defendants refused to complete and fulfill their obligations under the Agreements as more specifically set forth in this Complaint.

97.     At the time of making the promises inducing the action on the Plaintiffs' part, Defendants could reasonably foresee that their failure to perform pursuant to the promises would cause the damages Plaintiffs have suffered.

98.     As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

**COUNT VIII**
**DETRIMENTAL RELIANCE**
**Defendant Paradigm Jet Management, Inc., and Jetaway Air Service, LLC**

99.     Plaintiffs hereby reaver and reallege paragraphs 1 through 98 as if specifically restated herein paragraph for paragraph word for word.

100.    That Defendants explicitly promised that if Plaintiffs entered into the Paradigm Aircraft Management Agreement (AMA) for the Gulfstream G-V Aircraft, the AMA Gulfstream G-IV Aircraft, and Defendant Jetaway's Lease Agreement for the G-V Aircraft, that Plaintiffs were entitled to the use and possession of the two Aircraft, which the Plaintiffs had continuing use and possession of pursuant to the above Agreements, and that the Defendants would maintain the two aircraft so they would be flyable for FAA Part 135 Air Charters without being needlessly grounded

for known maintenance inspections.

101.    That Defendants' promises were clear, definite and unequivocal and were specifically made to induce Plaintiffs to enter into the three above contracts for use and possession of the Aircraft.

102.    In reliance on the promise, and to their substantial detriment, the Plaintiffs entered into the Agreements and the Plaintiffs performed all that was expected in cooperating with Defendants.

103.    Despite Plaintiffs repeated demands, Defendants refused to complete and fulfill their obligations under the Agreements as more specifically set forth in this Complaint.

104.    At the time of making the promises inducing the action on the Plaintiffs' part, Defendants could reasonably foresee that their failure to perform pursuant to the promises would cause the damages Plaintiffs have suffered.

105.    As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

**COUNT IX**
**EXEMPLARY DAMAGES**
**Defendant Paradigm Jet Management, Inc., and Jetaway Air Service, LLC**
**Justin Sullivan, Individually, UB Air and UB Air, LLC**

106.    Plaintiffs hereby reaver and reallege paragraphs 1 through 105 as if specifically restated herein paragraph for paragraph word for word.

107.    Defendants' representations, actions and in actions, were made intentionally and maliciously and have caused Plaintiffs to suffer humiliation, outrage and indignation.

108.    Defendants were guilty of reckless, intentional, willful, and wanton acts and

omissions, as stated above, which evidence a total and conscious disregard for Plaintiffs and which justifies an award for exemplary damages.

109.    As a direct result of the above actions of Defendants, Plaintiffs have suffered severe damages and Plaintiffs pray for an amount as will be deemed fair and just by a jury together with reasonable attorneys' fees, interest and costs.

**WHEREFORE**, Plaintiffs pray for an amount as will be deemed fair and just by a jury together with interest and costs.

Respectfully submitted,

/s/ Steven M. Chait

Steven M. Chait, P.L.C.
Attorney for Plaintiffs
6515 Highland Road, Ste. 100
Waterford, MI 48327
Dated: March 3, 2016                    (248) 666-1100

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IBX JETS, LLC, a South Carolina Limited                )
Liability Company,                                                     )
                          Plaintiff,                          )
                                            )

-vs-                                                                              )
                                            )     Honorable _____
PARADIGM JET MANAGEMENT, INC., a            )     Case No. _____
Michigan Corporation, JETAWAY AIR                    )
SERVICE, LLC, a Michigan Limited Liability       )
Company, JUSTIN SULLIVAN, Individually,         )
 and d/b/a UB AIR, a Massachusetts Sole               )
Proprietorship, and UB AIR, LLC,                            )
a Limited Liability Company,                                    )
                         Defendants,                      )
                                            )

**AND**                                                                      )
                                            )
CHRISTOPHER JONES, Individually, MICHAEL  )
JONES, Individually, BRANDON COLEMAN,          )
Individually, and IBX AIR CORPORATION, a         )
Foreign Corporation,                                                  )
                         Plaintiffs,                        )
-vs-                                                                              )
                                            )
JUSTIN SULLIVAN, Individually, and d/b/a          )
UB AIR, a Massachusetts Sole Proprietorship,      )
and UB AIR, LLC, a Foreign Limited Liability     )
Company,                                                                      )
                         Defendants.                     )

**STEVEN M. CHAIT** (P33747)
**STEVEN M. CHAIT, P.L.C.**
Attorney for Plaintiffs
6515 Highland Road, Suite 100
Waterford, MI  48327
(248) 666-1100
(248) 666-5050 Facsimile

**<u>DEMAND FOR JURY TRIAL</u>**

## DEMAND FOR JURY TRIAL

**NOW COME** the Plaintiffs, **IBX JETS, LLC, CHRISTOPHER JONES, MICHAEL JONES, BRANDON COLEMAN and IBX AIR, CORPORATION,** by and through their attorneys, **STEVEN M. CHAIT, P.L.C.,** and hereby demands trial by jury in the within cause.

Respectfully submitted,

/s/ Steven M. Chait

Steven M. Chait, P.L.C.
Attorney for Plaintiffs
6515 Highland Road, Ste. 100
Waterford, MI 48327

Dated: March 3, 2016                    (248) 666-1100