UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IBX JETS, LLC, CHRISTOPHER JONES, MICHAEL JONES, BRANDON COLEMAN, and IBX AIR CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> JUSTIN SULLIVAN, and UB AIR, LLC, <br><br> Defendants. | Civil Action No. 16-cv-11604-IT |

MEMORANDUM & ORDER

March 7, 2018

TALWANI, D.J.

Plaintiffs IBX Jets, LLC ("IBX Jets"), Christopher Jones, Michael Jones, Brandon Coleman, and IBX Air Corporation ("IBX Air") initiated an action in the Western District of Michigan against Defendants UB Air, LLC ("UB Air"), Justin Sullivan, Paradigm Jet Management Inc. ("Paradigm"), and Jetaway Air Service LLC ("Jetaway"). See IBX Jets, LLC, et al. v. Paradigm Jet Mgmt. Inc., et al., No. 16-cv-229 (W.D. Mich. Oct. 24, 2017). Finding that it probably lacked personal jurisdiction over Defendants Sullivan and UB Air, and that venue for the claims against these defendants for defamation and tortious interference with advantageous relations was improper in the Western District of Michigan, the court transferred the defamation claim (Count V) and the tortious interference claim (Count VI) to the District of Massachusetts under 28 U.S.C. § 1406(a). Now before the court is Defendants UB Air and Sullivan's Motion for Summary Judgment [#122]. For the following reasons, Defendants' motion is ALLOWED.

I. Standard

Upon review of a motion for summary judgment, a court must view the record in the light most favorable to the non-moving party. See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is only appropriate "if the record, so viewed, discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011) (citing Fed. R. Civ. P. 56(c)(2)). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotations and citations omitted).

II. Background

The following facts are either undisputed in the summary judgment record, not properly disputed for summary judgment purposes, see Federal Rules of Civil Procedure 56(c) and (e)(2), or are viewed in the light most favorable to Plaintiffs.[1] UB Air is an aircraft charter broker. Def.'s Rule 56.1 Statement of Undisputed Material Facts [hereinafter "Defs.' SOF"] ¶ 5 [#123]. UB Air does not own or operate any aircraft, but instead connects customers who wish to

---

[1] Defendants have requested that the court take judicial notice of the Opinion and Order denying IBX Jets' Motion for Summary Judgment, and granting as to liability Jetaway and Paradigms' Motions for Summary Judgment in the Western District of Michigan case. Defs.' Request for Judicial Notice [#128]. Plaintiffs oppose the request, but concede that the court has discretion to accept the submission of the Michigan opinion and assign whatever weight to that opinion deemed appropriate. Pls.' Obj.to Req. for Judicial Not. 2-3 [#129]. The court notes that Plaintiff previously argued that the matter here "arises out of the same air charter flight from White Plains, New York to Ushuaisa, Argentina, which is a significant issue in the Michigan litigation," and that "there would be a duplication of resources if another US District court in Massachusetts had to utilize its resources to learn the facts of and handle litigation arising out of the same facts and parties that are involved in the Michigan litigation." Resp. to Mot. to Dismiss 3 [#30]. The court finds it appropriate to review the pleadings and orders in the Michigan case for background to the dispute, and allows Defendants' request for judicial notice for that limited purpose.

2

purchase charter flights with companies providing air transportation. Id.; Defs.' Mot. Summ. J. Ex. 2 ["Justin Sullivan Aff't"] ¶ 2 [#122-2]. One such client contracted with UB Air in August 2015 to arrange for a roundtrip charter flight between White Plains, New York, and Ushuaia, Argentina. Defs.' SOF ¶ 12. As arranged, the New York to Argentina leg was to take place December 20, 2015. Id. The return flight was scheduled for January 1, 2016. Id.

UB Air contacted IBX Jets, an air transportation provider. IBX Jets quoted a price of $186,410.83 for a roundtrip flight aboard a Gulfstream G-V aircraft operated by Paradigm and owned by Jetaway. Pls.' Rule 56.1 Responses to Def.'s Statement Undisputed Facts [hereinafter "Pls.' SOF Responses"] ¶ 13 [#126]. A UB Air manager signed a charter flight confirmation agreement with IBX Jets on August 10, 2015, confirming that IBX Jets would provide the agreed upon air charter services for UB Air's client. Pls.' SOF Responses Ex. 2 ["Contract"] [#126-2].[2]

UB Air wired $27,961.50 as an installment payment on September 1. Defs.' SOF ¶¶ 15-16. UB Air wired the remaining balance of $158,449.33 on December 9. Id.[3] The first leg of the trip took place as planned on December 20. Id. ¶ 21. On December 31, Rebecca Camacho, a representative for IBX Jets, emailed Paradigm stating that the return leg of the client's trip "has been cancelled . . . ." Defs.' SOF ¶ 22. That flight never occurred. Pls.' SOF Responses ¶ 23.

---

[2] Further details of the arrangements between these various parties can be found in the Opinion and Order issued by the Western District of Michigan, and attached as Exhibit A to Defendants' Request for Judicial Notice [#128].

[3] Defendants dispute whether UB Air wired these installment payments into an IBX Jets account, as Defendants contend, or into an IBX Air account, as provided in the contract between IBX Jets. See Defs.' SOF ¶¶ 15-16; Pls.' SOF Responses ¶¶ 15-16; Pls.' SOF Responses Ex. 3 ("Text Message") [#126-3]. This dispute is immaterial where Plaintiffs allege that the email at the center of this litigation was of and concerning both IBX Jets and IBX Air, and Plaintiffs make clear that IBX Air was controlled by IBX Jets. For example, Michael Jones testified that he, Christopher Jones, and Brandon Coleman operated the two companies as one and treated IBX Jets and IBX Air "as one and the same." See Defs.' SOF Ex. 11 ["Michael Jones Dep."] 17:23-18:2, 20:4-7 [#122-11].

The aircraft at issue was grounded on January 15, 2016. Defs.' SOF ¶ 29. As of January 18, Christopher and Michael Jones instructed IBX Jets's sales director, Brandon Coleman, not to quote any more trips. Defs.' SOF ¶ 30. According to Coleman, he "was directed not to quote anymore trips because they wouldn't have taken off anyway." Defs.' Mot. Summ. J. Ex. 9 ["Brandon Coleman Dep."] 12:22-23 [#122-9]. Describing the situation IBX Jets faced as of mid-January, Coleman testified that , "after – around the 18th or middle of the month, that timeframe, it was clear that, you know, there was a cash flow issue and kind of the immediate future as far as being able to book trips was up in the air." Id. at 13:5-10.

Justin Sullivan, UB Air's owner, posted an email to the National Business Aviation Association ("NBAA") charter email forum on January 18. Defs.' SOF ¶ 25; Defs.' Mot. Summ. J. Ex. 2 ["Sullivan Aff't"] ¶ 1 [#122-2]. NBAA is a private organization whose membership consists of both owners and operators of business aircraft and air charter brokers. Defs.' SOF ¶ 11. NBAA's charter email forum, on which Sullivan posted his email, enables NBAA members to post queries, make announcements, and communicate with other members about the air charter broker business. Defs.' Mot. Summ. J. Ex. 5 ["Benjamin Schwalen Aff't"] ¶¶ 2-4 [#122-5]. The subject line of Sullivan's email was "IBX Jets: Jet Charter Terrorists." Id. ¶ 25. In the body of the email, Sullivan wrote: "Hello. IBX Jets is an agent for Paradigm Jets G-V, N17ND. If anyone has had any issues with IBX booking a trip, cancelling it and then stealing your client's deposit, please contact me offline. Sincerely, Justin Sullivan." Id.

Sullivan's email was not the first time an air charter broker had posted an email critical of IBX Jets to the NBAA forum. The record includes multiple emails about IBX Jets from other NBAA members in 2015 and 2016. See Defs.' Mot. Summ. J. Ex. 6 ["NBAA Emails"] [#122-6]. For example, one NBAA member wrote in April 2015, under the subject line "SCAM!! IBX Jets

4

– Mike & Chris Jones," that "[i]f anyone else has encountered a money issue with IBX Jets please contact me offline. WARNING NO ONE USE THEM!! THEY WILL TAKE YOUR MONEY AND NEVER DO THE TRIP." Id. at 1. Numerous NBAA members responded to this email and described their similar experiences with IBX Jets. Id. at 10, 12, 14. Other emails requested feedback as to other NBAA members' experiences with IBX Jets. Id. at 5.

Neither IBX Jets nor IBX Air has operated any flights since January 2016. Pls.' SOF Responses ¶ 31.[4] The companies are no longer in business. Id. Coleman and the Joneses no longer work in the charter business. Defs.' SOF ¶ 31.

At some point, IBX Jets or IBX Air refunded to the client $20,000 of the amount paid for the trip. Pls.' SOF Responses ¶ 28.

### III. Discussion

Plaintiffs blame Sullivan's email for IBX Jets and IBX Air's collapse, alleging defamation and business defamation (Count V) and intentional interference with contracts, business relationships, and expectancies (Count VI). Defendants seek summary judgment as to both claims. Both parties agree that Massachusetts law governs the claims at issue.

#### A. *Defamation Claim*

Count V alleges defamation and business defamation.[5] Defamation claims under

---

[4] Plaintiffs rarely refer to IBX Air separately in the litigation except in the caption of the complaint, but their papers sometimes refer to "IBX" rather than "IBX Jets." It is not clear whether Plaintiffs intend a distinction by the use of this term. In an abundance of caution, the court has assumed that Plaintiffs are referring to either or both entities when they use the term "IBX."

[5] Massachusetts also recognizes a distinct tort of "commercial disparagement." Such a claim is similar to a defamation claim, except that "more stringent requirements [are] imposed upon the plaintiff seeking to recover for [commercial disparagement] in three important respects – falsity of the statement, fault of the defendant and proof of damage." HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 763 n.7 (Mass. 2013) (quoting Restatement (Second) of Torts §623A comment g, at 341

5

Massachusetts law have four elements: "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.'" Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510-11 (Mass. 2003)). Business defamation also requires that any defamatory statement prejudiced a plaintiff's business. See Massachusetts Sch. Law v. Am. Bar Ass'n, 952 F. Supp. 884, 888 (D. Mass. 1997). Plaintiffs argue that Sullivan's email defamed Plaintiffs, causing them to lose business from other NBAA members. Defendants dispute that the email concerned all Plaintiffs, that the email was defamatory, and that the email caused loss or is otherwise actionable.

As to the first element, Defendants concede that Sullivan's email concerned IBX Jets, but contend that the email concerned *only* IBX Jets, not the other Plaintiffs. The email references IBX Jets and "IBX," but does not refer to the individual Plaintiffs. If a defamation plaintiff "is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person [defamed] understood it to refer to him." Brauer v. Globe Newspaper Co., 217 N.E.2d 736, 739 (Mass. 1966). Sullivan's email referenced only "IBX Jets" and "IBX" which it described as "an agent for Paradigm Jet's G-V, N17ND." The email does not refer to

---

(1977)). While "[t]he line between commercial disparagement and defamation often is difficult to draw," the two actions "may merge when a disparaging statement about a product reflects on the reputation of the business that made, distributed, or sold it." Id. at 762 n.6. Plaintiffs have not alleged commercial disparagement. In any event, Plaintiffs' allegations are that Sullivan's email imputed a lack of integrity to *Plaintiffs*, not just their service. Therefore, any claim of commercial disparagement likely would have merged into Plaintiffs' defamation claim.

6

any officers or employees of the companies, either in general or specific terms.[6] Nor have Plaintiffs shown any extrinsic support for their claim that a reasonable reader would interpret Sullivan's email to concern anyone other than IBX Jets or IBX Air as a corporate entity. Therefore, the individual Plaintiffs have no claim for defamation.

Although the email is of and concerning IBX Jets and possibly IBX Air, the email also does not satisfy the second element requiring a publication to be a statement of fact to be actionable as defamation. See Scholz v. Delp, 41 N.E.3d 38, 45 (Mass. 2015). By asking other NBAA members whether they had experienced IBX Jets "booking a trip, cancelling it and then stealing your client's deposit," Sullivan framed his email as a request, akin to a question, that asked other NBAA members to contact him *if* they had experienced the issue he described. Use of cautionary terms indicate that a speaker is "indulging in speculation." Id. at 46. Cautionary language, including interrogatories, can "put the reader on notice that what is being read is opinion and thus weaken any inference that the author possesses knowledge of damaging, undisclosed facts." Milkovich v. Lorain Journal Co., 497 U.S. 1, 31 (1990) (quoting Ollman v. Evans, 750 F.2d 970, 983 (D.C. Cir. 1984)). What Sullivan said cannot be proven wrong. He only asked members to contact him if they had experienced the series of events he described. Even if no other NBAA member had experienced those events, that does not show that Sullivan's conditional request for information was false.

To the extent Plaintiffs rely on the subject line of Sullivan's email, "IBX Jets: jet charter terrorists" and the word "stealing" in the body of the email, these words cannot reasonably be construed as statements of fact. Rhetorical flourish is not actionable as defamation. See Dulgarian v. Stone, 652 N.E.2d 603, 609 (Mass. 1995) ("Highway Robbery?" not actionable). A

---

[6] That these individuals' email addresses appear in the address line as being sent a copy of the email does not make the email referencing IBX of and concerning them individually.

7

reasonable reader would not interpret the email as making an assertion that IBX Jets had engaged in terrorism or were thieves, just as a reader of a union publication calling nonunion workers "traitors" would not interpret the publication to say that those workers were attempting to overthrow their government. See Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264, 285-86 (1974). A reasonable reader of Sullivan's email would construe the subject line and email at most as a charge that IBX Jets or IBX Air failed to deliver a contracted for service and refused to refund money, not that either company engaged in terrorist activity.

As to the implied statement that IBX Jets or IBX Air failed to deliver a contracted for service and refused to refund money, "[t]ruth is an absolute defense to a defamation action under Massachusetts law." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 42 (1st Cir. 1998). Plaintiffs argue that the failure to deliver the services was Paradigm's fault, not IBX Jets' fault, but the question of fault is not material to the question of whether Plaintiffs did or did not deliver the promised services. Plaintiffs also claim that IBX Jets refunded $20,000 to Defendants' client, that Paradigm and Jetaway later settled with the client, and that the client ultimately received all money owed. Pls.' SOF Responses Ex. 4 ["Michael Jones Affidavit"] ¶ 6 [#126-4]; Pls.' SOF Responses Ex. 7 ["Justin Sullivan Deposition"] 64:5-16 [#126-7]. Paradigm and Jetaway's later payments to the client (that they seek in turn to recoup directly from Plaintiffs in the Michigan litigation) is immaterial to the truth of the assertion that IBX Jets or IBX Air did not fully refund the money to the client. What matters is whether the statement as true when it was published. Defendants have shown it was.

For each of the above reasons, Plaintiffs' defamation claim fails as a matter of law.

B. *Tortious Interference with a Contract, Business Relationship, or Expectancy*

Count VI alleges tortious interference with contracts, business relationships, and expectancies. Elements of a tortious interference with contract or business relationship claim are: "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996). Interference with anticipated business relationships can also support a tortious interference claim. See Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1997).

The thrust of Plaintiffs' argument derives from the deposition testimony provided by Christopher Jones. Prior to Sullivan sending the email at issue, according to Jones, IBX Jets typically received fifty to sixty requests per day from brokers for quotes on air transportation services. Defs.' Defs.' Mot. Summ. J. Ex. 10 ["Christopher Jones Aff't"] 35:7-11 [#122-10]. After Sullivan's email, according to Plaintiffs, this number dropped to zero. Id.

In light of the numerous issues IBX Jets was facing even prior to Sullivan's email, Plaintiffs' argument as to causation and damages are not compelling. Yet even assuming Plaintiffs could somehow prevail on those issues, their claim would fail as a matter of law on the third element. That is, to the extent Sullivan's email interfered with any contracts, business relationships, or expectancies, Plaintiffs have not shown how that interference was *improper*. To satisfy this element, a plaintiff must show "wrongfulness beyond the interference itself." James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1250 (1st Cir. 1997). Wrongful conduct may occur, for example, when a defendant "used threats, misrepresented any facts, [or] defamed anyone." United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 24 (Mass. 1990).

9

As described above, Sullivan's email does not constitute defamation. Nor was it otherwise improper. Even Christopher Jones testified that his interpretation of the email was that "Mr. Sullivan was expressing his frustration through that e-mail as a result of the cancellation of the . . . trip." Defs.' Mot. Summ. J. Ex. 10 ["Christopher Jones Aff't"] 40:1-3 [#122-10]. Sullivan was not a competitor of IBX Jets. He had no inherent interest in harming IBX Jets's reputation or interfering with its business. As a customer, however, Sullivan had been harmed by IBX Jets's conduct. Sullivan had an interest as an NBAA member in ensuring that he and other air charter brokers obtained accurate information about which air transportation companies failed to perform promised services and then refused to issue refunds. As other NBAA emails about IBX Jets confirm, this was one of the purposes of NBAA's charter email forum. That purpose is not improper. Plaintiffs have not shown Sullivan's email was for any other purpose. Absent a showing of improper purpose, the interference claims fail as a matter of law.

IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment [#122] is ALLOWED.
IT IS SO ORDERED.

March 7, 2018 /s/ Indira Talwani
United States District Judge